# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-377

MAXINE HENRY, an individual,

    Plaintiff,

v.

TESLA, INC., a Texas corporation; and TD BANK, N.A, a national banking association d/b/a TD Auto Finance,

    Defendants.

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Maxine Henry, an individual ("**Plaintiff**"), files her Complaint and Jury Demand Tesla, Inc., a Texas corporation ("**Tesla**"); and TD BANK, N.A., a national banking association d/b/a TD Auto Finance ("**TD Bank**") and states as follows.

## I. INTRODUCTION

1. On May 06, 2023, Plaintiff purchased a Tesla Model X, VIN Number, 7SAXCBE60PF399327 ("the "Vehicle") from Tesla. This was the first car that Plaintiff had purchased entirely on her own, and she was proud to have bought it and to own it.

2. Plaintiff financed the purchase through a common and commonly misunderstood contract—a "retail installment sale contract". A retail installment sale contract is a contract where the purchaser, like Plaintiff, agrees to buy a car and pay for it through installment payments. In exchange for agreeing to accept payment in installments, the seller agrees to accept a finance charge that accrues against the outstanding balance of the amount financed until it is paid in full. But the seller is not a finance company and would prefer to be paid in full at or near the time of the sale. So the seller assigns the retail installment sale contract to a finance company, who pays the seller for the contract. After

the retail installment sale contract is assigned to the finance company, the finance company steps into the contractual shoes of seller and receives the payments from the buyer. Because the assignment from the seller to the finance company often happens quickly and is frequently pre-arranged by the seller, most people view this as a loan from the finance company to the buyer to pay the seller for the car. It's not. It is a contract with the seller that is then assigned to a finance company.

3. This is how Plaintiff financed her purchase. She bought the Vehicle from Tesla, Tesla agreed to accept installment payments for the Vehicle, and then Tesla assigned the contract (and the right to receive the installment payments) to TD Bank. But Tesla was not happy with the amount that TD Bank paid Tesla to purchase the installment sale contract. Rather than accept the amount that TD Bank paid to acquire the contract, Tesla tried to force Plaintiff to sign a new contract—under threat of repossession—so that Tesla could make a few thousand dollars more. After Tesla unsuccessfully attempted to repossess the Vehicle with no right to do so, Tesla reminded Plaintiff that it could simply disable the Vehicle at any time. As a consequence, Plaintiff has been unable to drive the Vehicle for months for fear that Tesla will leave her stranded, embarrassed, and possibly worse. Because Tesla's attempts to make $6,259.50 were illegal and violated multiple consumer protection laws and the retail installment sale contract itself, Plaintiff brings this action for monetary redress and injunctive relief prohibiting Tesla from attempting to steal her car.

## II. PARTIES, JURISDICTION, AND VENUE

4. Plaintiff is an individual, natural person, and resides at in the County of Arapahoe, State of Colorado.

5. Tesla is a Texas corporation with a principal place of business located at 1 Tesla Road, Austin, TX 78725.

6. Tesla maintains a registered agent in the State of Colorado of CT Corporation System at 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112.

7. TD Bank is a national banking association with a principal place of business located at 1701 Marlton Pike East, Cherry Hill, NJ 08034.

8. This Court has jurisdiction over the claims brought hereunder pursuant to 28 U.S.C. § 1331.

9. This Court has jurisdiction over the state law claims brought hereunder pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and is between citizens of different states.

10. This Court has jurisdiction over the state law claims brought hereunder pursuant to 28 U.S.C. § 1367 because those claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

### III. FACTUAL ALLEGATIONS

12. On May 6, 2023, Plaintiff purchased the Vehicle from Tesla.

13. The Vehicle was acquired primarily for personal, family, or household purposes.

14. The purchase price was $121,584.10 with sales tax of $7,954.10 and registration fees of $47.20.

15. Plaintiff paid a downpayment of $7,591.80.

16. Tesla agreed to accept the balance of the purchase price and sales tax ($114,038.50), together with a finance charge of $20,372.98 in seventy-two (72) equal installment payments of $1,866.84 commencing June 20, 2023.

17. Plaintiff and Tesla executed a "Retail Installment Sale Contract" dated May 6, 2023 (the "**RISC**").

18. Tesla is the "Seller", as that term is used in the RISC.

19. The RISC includes the following agreement:

3

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown in this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on page 1 of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract.

b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give you back all consideration Seller has received in accordance with the terms of the Retail Purchase Agreement or Buyers Order.

d. If you do not immediately return the vehicle, Seller may use any legal means to take it back (including repossession) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession.

f. The terms of this Seller's right to cancel survive Seller's cancellation of this contract.

20. On Page 1 of the RISC, Tesla has ten (10) days to cancel the RISC.

21. Tesla did not cancel the RISC within the timeframe permitted to cancel the RISC.

22. Tesla assigned the RISC to TD Bank.

23. The RISC includes the following agreement:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

24. After Tesla assigned the RISC to TD Bank, Plaintiff duly made each and every installment payment to TD Bank on time.

25. On or about May 21, 2024, the balance of the RISC that was owed to TD Bank was mysteriously paid off.

26. TD Bank later informed Plaintiff that the payoff came from Tesla.

27. According to TD Bank at the time, Tesla now "owned" the Vehicle and TD Bank refunded some of Plaintiff's prior payments to Tesla.

28. The payment from Tesla to TD Bank was not an act of benevolence or generosity.

29. Instead, it turns out that Tesla sold the RISC to TD Bank for less than the face value of the RISC.

30. In other words, TD Bank paid Tesla less than what Tesla wanted to be paid for the RISC.

31. Specifically, TD Bank paid Tesla $6,259.50 less than what Tesla wanted or expected to be paid.

32. Tesla refers to this as "shortfunding".

33. The reason TD Bank did not pay Tesla what Tesla wanted for the RISC was due to a mistake made by Tesla.

34. Ater Tesla paid off the RISC, TD Bank sent Plaintiff a letter stating that her loan—the RISC that she had been paying on for months—had been declined.

35. Ater Tesla paid off the RISC, TD Bank stopped accepting payments on the RISC.

36. Ater Tesla paid off the RISC, Tesla refused to accept payments on the RISC.

37. Plaintiff offered to make all monthly payments due and owing on the RISC.

38. Tesla rejected Plaintiff's offer to make all monthly payments due and owing on the RISC.

39. Plaintiff is ready, willing, and able to make all outstanding payments due and owing on the RISC.

40. Plaintiff will make all outstanding payments due and owing on the RISC but Tesla and/or TD Bank refuses to accept them.

41. To make up the $6,259.50 shortfall that Tesla believes it is entitled to, Tesla began a campaign of illegal acts and false statements to coerce Plaintiff into refinancing the Vehicle on the terms that Tesla wanted.

42. The false statements included:
    a. Tesla told Plaintiff that it was TD Bank who had "flat cancelled" the RISC;
    b. Tesla told Plaintiff that the RISC was "deleted"; and
    c. Tesla told Plaintiff that she had only two options: refinance the RISC or voluntarily surrender the Vehicle.

43. Tesla sent a repo man to Plaintiff's house to take the Vehicle.

5

44. Tesla had no right to take the Vehicle.

45. Following Tesla's illegal attempt to repossess the Vehicle, Plaintiff demanded that Tesla inform her why Tesla was trying to take the Vehicle.

46. Tesla admitted that it had made a mistake and wanted Plaintiff to pay for its mistake.

47. Tesla's mistake did not result in any benefit to Plaintiff.

48. Instead, Tesla's mistake was entirely between Tesla and TD Bank.

## COUNT I
### (Violations of C.R.S. § 4-9-609(a)(1))
### (Against Tesla)

49. Plaintiff incorporates by reference the allegations of paragraphs 1 through 48 as though fully set forth herein.

50. Tesla contends that it is a secured party, as that term is used by C.R.S. § 4-9-102(a)(75)(A).

51. A secured party may take possession of collateral only after default. C.R.S. § 4-9-609(a)(1).

52. Plaintiff is not in default of the RISC.

53. Tesla has effectively made the Vehicle inoperable by threatening, directly or by implication, that Tesla will disable the Vehicle if Plaintiff uses it.

54. Tesla is liable to Plaintiff for damages in an amount to be determined at trial. C.R.S. §§ 4-9-625(b) and (c).

55. Plaintiff is entitled to injunctive relief restraining Tesla's illegal attempts to repossess the Vehicle. C.R.S. § 4-9-625(a).

56. Tesla's actions are fraudulent in that its representations to Plaintiff are deceitful and made with intent for Plaintiff to rely upon them.

57. Tesla's actions are malicious in that Tesla knows that it has made the mistake but wants Plaintiff to pay for it.

58. Tesla's actions are done heedlessly and recklessly in that they are aware of the contractual terms but intentionally ignore them.

59. Tesla's actions are done without regard to the consequences of threatening to take a person's mode of transportation.

60. Tesla's actions are done without regard to the Plaintiff's rights under the RISC and applicable law.

61. Plaintiff is entitled to exemplary and/or punitive damages in an amount to be determined at trial.

## COUNT II
### (Violations of ECOA, 15 U.S.C. § 1691 *et seq.*)
### (Against All Defendants)

62. Plaintiff incorporates by reference the allegations of paragraphs 1 to 48 as though fully set forth herein.

63. "Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."  15 U.S.C. § 1691(d)(1).

64. "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request."  15 U.S.C. § 1691(d)(2).

65. Tesla regularly extends, renews, or continues credit by entering into retail installment sale contracts with consumers.

66. Tesla regularly arranges for the extension, renewal, or continuation of credit through retail installment sales contracts with consumers.

67. Tesla participates in accessing consumer credit files to arrange the extension of credit.

68. Tesla assesses guidelines established by lenders, and sets terms of loan in retail installment sales contract, which it shops to selected lenders.

69. The terms of financing arrangements selected by Tesla are subject to lender approval.

70. Tesla acts as an intermediary between purchasers and ultimate creditors.

71. Tesla is a "creditor" as that term is defined by 15 U.S.C. § 1691a(e)

72. TD Bank regularly extends, renews, or continues credit through entering into retail installment sale contracts with consumers.

73. TD Bank regularly arranges for the extension, renewal, or continuation of credit through retail installment sales contracts with consumers.

74. TD Bank is the assignee of an original creditor and participates in the decision to extend, renew, or continue credit.

75. TD Bank is a "creditor" as that term is defined by 15 U.S.C. § 1691a(e)

76. Plaintiff applied for credit with Tesla and/or TD Bank and is an "applicant", as that term is defined by 15 U.S.C. § 1691a(b).

77. On or about May 6, 2023, Plaintiff completed an application for credit with Tesla and/or TD Bank.

78. This was the only application for credit that Plaintiff submitted to either Tesla or TD Bank.

79. Any other application for credit with Tesla and/or TD Bank is unauthorized.

80. Within thirty (30) days of receipt of Plaintiff's completed application for credit, neither Tesla nor TD Bank notified Plaintiff that Plaintiff's application for credit had been denied.

81. According to Tesla and TD Bank, on or about April 19, 2024, more than a year after her only application for credit, Plaintiff's application for credit was denied more than thirty (30) days after it was completed.

82. The purported denial of Plaintiff's application for credit was "adverse action" as that term is used by 15 U.S.C. § 1691(d)(6).

83. Plaintiff is entitled to actual damages under 15 U.S.C. § 1691e(a).

84. Plaintiff is entitled to punitive damages of $10,000.00 under 15 U.S.C. § 1691e(b).

85. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1691e(c).

86. Plaintiff is entitled to her reasonable attorney fees and costs under 15 U.S.C. § 1691e(d).

## COUNT III
### (Violations of C.R.S. § 4-9-210)
### (Against Tesla Only)

87. Plaintiff incorporates by reference the allegations of paragraphs 1 to 48 as though fully set forth herein.

88. Plaintiff requested Tesla to provide an "accounting", as defined by C.R.S. § 4-9-210(a)(2), and a "statement of account", as defined by C.R.S. § 4-9-201(a)(4).

89. Plaintiff's requests were made in accordance with C.R.S. § 4-9-210.

90. Test did not respond in accordance with C.R.S. § 4-9-210(b) or (e).

91. Plaintiff is entitled to actual damages plus five hundred dollars, adjusted for inflation pursuant to C.R.S. § 4-9-625(j), in statutory damages from each defendant. C.R.S. § 4-9-625(f).

92. Plaintiff is entitled to her reasonable attorney fees and costs. C.R.S. § 4-9-625(i).

# COUNT IV
## (Declaratory Judgment)
## (Against All Defendants)

93. Plaintiff incorporates by reference the allegations of paragraphs 1 to 48 as though fully set forth herein.

94. Tesla duly assigned the RISC to TD Bank.

95. TD Bank has represented to Plaintiff that Tesla paid off the RISC.

96. If Tesla paid off the RISC, then TD Bank was obligated to send the title for the Vehicle to Plaintiff.

97. If Tesla paid off the RISC, Plaintiff did not owe any performance under the RISC.

98. Now, TD Bank contends that Tesla "repurchased" the RISC.

99. Despite contradicting its agents' prior statements that Tesla paid off the RISC, TD Bank contends that the payments was processed as a repurchase but refuses to provide any documentation of how the payment was received or processed and for what reasons.

100. Plaintiff has requested documentation of how the payment to TD Bank was processed, but TD Bank refuses to release documentation of how the payment was received and processed.

101. Tesla's position contradicts TD Bank's position with respect to the payment made by Tesla to TD Bank for the RISC.

102. Tesla has represented to Plaintiff that TD Bank "cancelled" the RISC.

103. Tesla has represented to Plaintiff that the RISC was "deleted".

104. Tesla has represented to Plaintiff that the RISC is "not active".

105. Based on the contradictory statements made by Tesla and TD Bank—statements that contradict each other and themselves—there is uncertainty about whether

any performance is due under the RISC and to whom that performance is owed, including whether TD Bank should have released the title to Plaintiff.

106. Notwithstanding its representations that the RISC was either cancelled or deleted, Tesla intends to invoke the remedy of repossession under the contract that Tesla asserts is cancelled or deleted.

107. The RISC may only be cancelled within ten (10) days of the date it was executed.

108. Any cancellation of the RISC more than ten (10) days after the execution is invalid.

109. Tesla has not represented that the RISC was assigned or re-assigned to Tesla.

110. Only Tesla had a right to cancel the RISC and that right expired upon the earlier of its assignment of the RISC to TD Bank or ten (10) days after the execution of the RISC.

111. If TD Bank cancelled the RISC—as Tesla has represented to Plaintiff—TD Bank has breached the RISC.

112. Tesla, TD Bank, or both anticipatorily breached the RISC by refusing Plaintiff's tender of performance.

113. Plaintiff was entitled to suspend her performance under the RISC.

114. Due to the uncertainty created by Tesla and TD Bank's actions, together with the threats to repossess the Vehicle or to disable it while in use, Plaintiff has been unable to use the Vehicle.

115. There is a real and substantial controversy over the rights, duty, and obligations under the RISC.

116. A declaration of Plaintiff, Tesla, and TD Bank's respective rights, duties, and obligations would affect the behavior of the parties to this lawsuit.

117. Plaintiff is entitled to a declaration that:
    a. TD Bank is the holder of the RISC;
    b. The RISC has not been assigned or reassigned to Tesla;

c. Tesla has no interest in the RISC;

d. Plaintiff is not in default of the RISC;

e. TD Bank either anticipatorily breached the RISC or no performance was due to TD Bank because Tesla had paid off the RISC;

f. To the extent that Plaintiff had any remaining obligations under the RISC after Tesla paid it off, Plaintiff was entitled to suspend her performance under the RISC;

g. To the extent that Tesla paid off but did not repurchase the RISC, TD Bank was obligated to release its lien against the Vehicle and return the title to Plaintiff;

h. Any cancellation of the RISC was invalid and ineffective; and

i. Neither Tesla nor TD Bank has any right to repossess or disable the Vehicle.

## COUNT V
### (Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*)
### (Against TD Bank Only)

118. Plaintiff incorporates by reference the allegations of paragraphs 1 to 48 as though fully set forth herein.

119. On April 9, 2024, TD Bank obtained Plaintiff's "consumer report", as that term is defined by 15 U.S.C. § 1681a(d)(1).

120. On information and belief, TD Bank obtained Plaintiff's consumer report on April 9, 2024, under the false pretense that Plaintiff was applying for a new loan with TD Bank.

121. On or about April 9, 2024, Plaintiff did not apply for a new loan with TD Bank.

122. On or about April 9, 2024, Plaintiff had not provided written instructions to TD Bank to obtain Plaintiff's consumer report.

123. On or about April 9, 2024, Plaintiff did not have a pending application for credit with TD Bank.

12

124. On or about April 9, 2024, TD Bank did not have a "permissible purpose", as that term is defined by 15 U.S.C. § 1681b(a), for obtaining Plaintiff's consumer report.

125. TD Bank knew or should have known that Plaintiff did not apply for a new loan with TD Bank.

126. After TD Bank accepted the payoff for the RISC or sold the RISC back to Tesla, it no longer had a permissible purpose to obtain a consumer report.

127. After TD Bank accepted the payoff for the RISC or sold the RISC back to Tesla, TD Bank obtained a consumer report on Plaintiff without a "permissible purpose", as that term is defined by 15 U.S.C. § 1681b(a).

128. On August 15, 2024, TD Bank had not obtained a subpoena to obtain Plaintiff's consumer report.

129. On or before August 15, 2024, Plaintiff had not provided written instructions to TD Bank to obtain Plaintiff's consumer report.

130. On August 15, 2024, Plaintiff did not have a pending application for credit with TD Bank.

131. On August 15, 2024, Plaintiff did not owe TD Bank any money.

132. On August 15, 2024, Plaintiff did not have an open account with TD Bank.

133. On August 15, 2024, Plaintiff was not applying for employment with TD Bank.

134. On August 15, 2024, Plaintiff was not applying for insurance with TD Bank.

135. On August 15, 2024, Plaintiff was not applying for a license or other benefit granted by a governmental instrumentality.

136. On August 15, 2024, Plaintiff was not obligated on an existing credit obligation for which TD Bank was a potential investor or servicer or current insurer.

137. On August 15, 2024, TD Bank did not have a legitimate business need for the information contained in a "consumer report" about Plaintiff.

138. On August 15, 2024, Plaintiff was not applying for government-sponsored individually-billed travel charge cards.

139. On August 15, 2024, TD Bank obtained a consumer report from Experian.

140. Obtaining the information contained in a consumer report intrudes upon the seclusion or solitude of a person.

141. Obtaining the information contained in a consumer report without a permissible purpose is highly offensive to a reasonable person.

142. Experian is a "consumer reporting agency" as that term is used in 15 U.S.C. § 1681, *et seq.*

143. When TD Bank obtained a consumer report from Experian, it did so knowing that Plaintiff had not authorized TD Bank to obtain her consumer report.

144. TD Bank knew that it did not have a permissible purpose for obtaining Plaintiff's consumer report on August 15, 2024.

145. TD Bank obtained a consumer report from a consumer reporting agency knowing that it did not have a permissible purpose to obtain that report.

146. Plaintiff is entitled to recover from TD Bank the greater of her actual damages or $1,000.00.  15 U.S.C. § 1681n(a)(1)(B).

147. Plaintiff is entitled to punitive damages against TD Bank.  15 U.S.C. § 1681n(a)(2).

148. Plaintiff is entitled to her reasonable attorney fees and costs.  15 U.S.C. § 1681n(a)(3).

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury.

WHEREFORE, Plaintiff Maxine Henry, an individual, prays for judgment against Defendants in accordance with the claims for relief set forth above and as follows:

1. Awarding Plaintiff actual damages in an amount to be proven at trial;
2. Awarding Plaintiff statutory damages in an amount to be proven at trial;
3. Awarding Plaintiff punitive damages in an amount to be proven at trial;
4. Awarding Plaintiff exemplary damages in an amount to be proven at trial;

5. Awarding Plaintiff pre-judgment and post-judgment interest as may be allowed under the law;

6. Awarding Plaintiff her reasonable attorney fees;

7. Awarding Plaintiff's costs;

8. Declaring Plaintiff's and Defendants' rights, duties, and obligations under the RISC as set forth above; and

9. Awarding such other and further relief as the Court may deem just and proper.

Dated: April 16, 2025

                                  **Vedra Law LLC**

                            By: /s/ Daniel J. Vedra
                                  Daniel J. Vedra
                                  1444 Blake Street
                                  Denver, Colorado 80202
                                  303-937-6540
                                  dan@vedralaw.com
                                  *Attorneys for Plaintiff*

Case No. 1:25-cv-00377-JLK   Document 12   filed 04/16/25   USDC Colorado   pg 16 of 17

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed and served on all parties of record by CM/ECF as of the date first written above.

/s/ Daniel J. Vedra
Daniel J. Vedra
