IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MAXINE HENRY,<br><br>  Plaintiff,<br><br>v.<br><br>TESLA, INC. and TD BANK, N.A. d/b/a TD AUTO FINANCE,<br><br>  Defendants. | Civil Action No. 1:25-cv-00377 |

**DEFENDANT TD BANK, N.A.'S**
**MOTION TO COMPEL ARBITRATION**

Defendant TD Bank, N.A. (TD Auto Finance LLC merged with and into TD Bank, N.A. as of December 31, 2021) ("TD"), by and through their attorneys, submit this Motion to Compel Arbitration (the "Motion") of Plaintiff Maxine Henry's ("Plaintiff") Amended Complaint ("Complaint"), and states as follows:

**INTRODUCTION**

This Motion can be resolved by a straightforward application of the Federal Arbitration Act and controlling case law. There is no dispute that a valid agreement to arbitrate the claims in the Amended Complaint exists between Plaintiff and TD, that the parties to the contract delegated all issues of arbitrability to the arbitrator, and that Plaintiff's claims fall within the scope of the Arbitration Provision.

Plaintiff executed a Retail Installment Sales Contract for the purchase of a vehicle, in which she agreed to arbitrate any claims she might have against Tesla and TD. Despite Plaintiff's express agreement to arbitrate all claims, she filed a complaint against TD for claims arising from the underlying relationship between herself, Tesla, and TD, and alleged acts that occurred regarding

1

the contract and vehicle. However, under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, TD is entitled to resolve Plaintiff's claims through the dispute resolution procedures provided for in the parties' contract. Specifically, Plaintiff voluntarily agreed to arbitrate any claims against TD when she executed the underlying contract for the purchase of the vehicle. Further, Plaintiff agreed that the arbitrator would decide all issues of arbitrability, pursuant to the terms of the arbitration clause. Plaintiff's claims also fall within the scope of the Arbitration Provision, to the extent the Court finds that the delegation clause is not applicable.

TD respectfully requests that the Court enter an order requiring Plaintiff to comply with the Arbitration Provision in the contract and compel her claims in the Amended Complaint to binding arbitration.

## STATEMENT OF FACTS

On April 13, 2023, Maxine Henry Consulting, LLC and Plaintiff, as co-buyer, purchased a 2023 Tesla Model X (the "Vehicle") by executing a Retail Installment Sales Contract (the "Contract") with Tesla. ECF No. 12 ¶¶ 2-3, 12, 17; Ex. 1 ("TD Decl.") ¶ 8, Ex. A (Retail Installment Sales Contract). The Contract was assigned to TD. ECF No. 12 ¶ 22; TD Decl., ¶ 9. As a result, TD acquired all the seller's rights with respect to the Contract. Pursuant to the Contract, TD financed Plaintiff's purchase of the Vehicle. ECF No. 12 ¶ 22; TD Decl., ¶¶ 8-9. In exchange, among other promises, Plaintiff agreed to make monthly payments pursuant to the Contract. TD Decl., Ex. A at 1. Plaintiff also agreed to arbitrate "any claim" between herself and Tesla and TD. *Id*. at 1 & 6.

Specifically, the Contract includes an Arbitration Provision that makes clear that Plaintiff must submit any claims against Tesla and TD to arbitration:

**ARBITRATION PROVISION**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

2

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

TD Decl., Ex. A at 6. In addition, Plaintiff signed the separate Agreement to Arbitrate, acknowledging her agreement to abide by the Arbitration Provision. *Id*. at 1.

On February 4, 2025, despite the terms of the Arbitration Provision, Plaintiff filed the instant action. ECF No. 1. Plaintiff alleges claims related to the enforcement of the Contract and resulting relationship between herself, Tesla, TD regarding the Vehicle. ECF No. 12.

Prior to filing this Motion, TD notified Plaintiff's counsel of the existence of the Arbitration Provision in the Contract and its intent to seek arbitration. Despite knowledge of the Arbitration Provision, Plaintiff has not consented to arbitrate. TD now seeks an order compelling Plaintiff to abide by her agreement to arbitrate.

## **STANDARD OF REVIEW**

The FAA provides that if an action is filed "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such

3

agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had…" 9 U.S.C. § 3.  The FAA further empowers a party "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  These two provisions "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The movant must show that (i) the parties formed an agreement to arbitrate; and (ii) their dispute falls within that agreement's scope.  *Soc'y of Pro. Eng'g Emps. in Aerospace v. Spirit AeroSystems, Inc.,* 681 F. App'x 717, 721 (10th Cir. 2017) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 561 U.S. 287, 299 (2010)).  Formation "must always be decided by a court." *Fedor v. United Healthcare, Inc.,* 976 F.3d 1100, 1105 (10th Cir. 2020).  Courts also decide arbitrability—i.e., whether the parties' dispute falls within the scope of their arbitration agreement—unless there is "clear and unmistakable evidence" that the parties agreed to delegate this issue to the arbitrator.  *See Belnap v. Iasis Healthcare,* 844 F.3d 1272, 1281 (10th Cir. 2017).  Arbitrable disputes include not only the interpretation of an agreement's scope but also gateway issues such as the agreement's enforceability as a matter of public policy.  *See Fedor,* 976 F.3d at 1106 (citing *Granite Rock Co.,* 561 U.S. at 297, 299).

## **ARGUMENT**

### A.     **The FAA Governs Plaintiff's Arbitration Provision With TD And Directs Courts To Rigorously Enforce Agreements To Arbitrate.**

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone*, 460 U.S. at 24; *see also BOSCA, Inc. v. Bd. of Cnty. Comm'rs,* 853 F.3d 1165, 1170 (10th

Cir. 2017) (quoting *Moses H. Cone,* 460 U.S. at 24) (This provision "reflects 'a liberal federal policy favoring arbitration agreements,' and creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'").

The FAA creates a body of federal substantive law governing "the duty to honor an agreement to arbitrate." *Moses H. Cone*, 460 U.S. at 25 n.32. The FAA controls this Motion for two reasons. First, the arbitration agreement specifically states that it will be governed by the FAA. *See* Exh. A at 6. Courts routinely enforce such provisions. Second, the FAA applies to all arbitration agreements in contracts "evidencing a transaction involving [interstate or foreign] commerce." 9 U.S.C. § 2. The phrase "involving commerce" has been construed broadly to encompass the full scope of Congress's commerce-clause power, and therefore would apply to a transaction between Tesla, a Texas corporation [ECF No. 12 ¶ 5], TD, a national banking association with its principal place of business in New Jersey [ECF No. 12 ¶ 7], and Plaintiff, a citizen of Colorado [ECF No. 12 ¶ 4], who purchased the vehicle in Colorado. TD Decl., Ex. A. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 (4th Cir. 2012) (holding a transaction between the citizen of one state and a financing company in another involved interstate commerce for the purposes of triggering the FAA); *Gerges v. Wells Fargo Bank N.A.*, 121CV00810MISGJF, 2021 WL 5810484, at *2 (D.N.M. Dec. 7, 2021), *reconsideration denied*, 121CV00810MISGJF, 2022 WL 123863 (D.N.M. Jan. 13, 2022) (citing 9 U.S.C. § 2) ("The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate a contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'").

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable," and that district courts shall enforce arbitration agreements "in

5

accordance with the terms of the agreement." 9 U.S.C. §§ 2, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). These provisions codify the "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA directs federal courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *see also ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995) ("If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains…broad and sweeping language."),

In light of this strong presumption in favor of arbitration, courts in the Tenth Circuit will compel arbitration if (i) the parties formed an agreement to arbitrate; and (ii) their dispute falls within that agreement's scope. *Soc'y of Pro. Eng'g Emps. in Aerospace v. Spirit AeroSystems, Inc.,* 681 F. App'x 717, 721 (10th Cir. 2017) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 561 U.S. 287, 299 (2010)). Where, as here, however, the parties have clearly and unmistakably delegated the second issue to the arbitrator to decide, the Court need only determine whether a valid agreement to arbitrate exists.

### B.     The Arbitration Provision Is A Valid Agreement To Arbitrate.

The fundamental question in deciding a motion to compel arbitration is whether the parties entered into a valid agreement to arbitrate. Here, that question is easily answered, because the Arbitration Provision in the Contract is in writing and satisfies the elements for contract formation under Colorado law.

### 1. The arbitration agreement is valid under Colorado law.

"[A]rbitration is a matter of contract . . . . [T]o determine whether a party has agreed to arbitrate a dispute," the court applies "ordinary state-law principles that govern the formation of contracts." *Jacks v. CMH Homes, Inc.,* 856 F.3d 1301, 1304 (10th Cir. 2017) (internal citations and quotation marks omitted). Whether a valid agreement to arbitrate exists "is simply a matter of contract between the parties." *Walker v. BuildDirect.com Techs., Inc.,* 733 F.3d 1001, 1004 (10th Cir. 2013) (quotation omitted). "To be enforceable, a contract requires mutual assent to an exchange between competent parties for legal consideration." *French v. Centura Health Corp.,* 509 P.3d 443, 449 (Colo. 2022). "Under Colorado law, a contract requires a meeting of the minds." *Bellman v. i3Carbon, LLC,* 563 F. App'x 608, 613 (10th Cir. 2014) (quotation omitted). "The requisite meeting of the minds is established by the parties' acts, conduct, and words, along with the attendant circumstances, and not by any subjective, unexpressed intent by either party." *French,* 509 P.3d at 449.

Here, Plaintiff admits executing the Contract and accepting its terms for the purchase of the Vehicle from Tesla, with financing by TD. ECF No. 12 ¶¶ 2-3, 12, 17. By virtue of her execution of the Contract and acceptance of the consideration provided in accordance with the terms of the Contract, Plaintiff accepted the offer to purchase the Vehicle and agreed to the terms of the Contract with Tesla and TD, indicating her assent and intent to be bound by its provisions. In addition, Plaintiff specifically assented to the terms of the Arbitration Provision by virtue of her signature. TD Decl., Ex. A at 1 & 6. There can be no dispute that Plaintiff agreed to the terms of the Contract, including the Arbitration Provision.

Plaintiff's agreement to arbitrate is a valid contract.

7

### C.   The Claims Falls Within the Scope Of The Arbitration Provision.

The Court's analysis should end with its determination that there is a valid agreement to arbitrate.  Because the Arbitration Provision in the Contract incorporates a delegation clause, the determination of whether the dispute in question falls within the scope of the Arbitration Provision is reserved for the arbitrator.  However, even if the Court were to consider this question, the only reasonable conclusion is that the dispute falls within the broad Arbitration Provision.

#### 1.   Questions of arbitrability are expressly delegated to the arbitrator.

Delegation provisions like this one are generally enforced and the Supreme Court has specifically held that under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, then the decision regarding enforceability is for the arbitrator alone.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).  As a consequence, if such a delegation provision is included in a mutually executed agreement, a court must "enforce the parties' agreement to arbitrate 'gateway' questions about arbitrability of claims and the scope of the arbitration agreement."  *Id.*; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."); *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800, at *5 (10th Cir. Mar. 22, 2022) (when no issues of contract formation are present, "the gateway issue of arbitrability must be submitted to the arbitrator consistent with the delegation provisions in the Arbitration Agreement.").  "The Supreme Court has held that 'when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator *all threshold questions* concerning arbitrability[.]'"  *Naizgi v. HSS, Inc.*, 685 F.Supp.3d 1015, 1020 (D. Colo. 2023) (quoting *Belnap v. Iasis Healthcare,* 844 F.3d 1272, 1280) (10th Cir. 2017) (emphasis added).

Here, there is clear and unmistakable evidence that the parties intended to arbitrate the issue of arbitrability.  The Arbitration Provision provides a clear and unmistakable expression of what claims are subject to arbitration: "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (***including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute***) . . . which arises out of or relates to [Plaintiff's] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)..." TD Decl., Ex. A at 6 (emphasis added).  Under *Rent-A-Center*, and as applied by this Court, any determination as to the arbitrability of Plaintiff's claims should be left to the arbitrator pursuant to the delegation clause as it specifically includes the interpretation and scope of the Arbitration Provision and the arbitrability of a claim or dispute.

Given the parties' agreement to arbitrate disputes, such as this one, arising out of their contractual relationship, Plaintiff's claims are subject to arbitration, and this Court should grant TD's Motion.

### 2.     Plaintiff's claims fall within the scope of the Arbitration Provision.

Even if the parties had not delegated the arbitrability determination to the arbitrator, the only conclusion the Court could reach under the applicable law is that Plaintiff's claims fall within the scope of the Arbitration Provision in the Contract.

When evaluating the scope of an arbitration agreement, there is a strong presumption in favor of arbitrability such that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).  Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

Courts have generally interpreted language such as "arising from or in connection with" quite expansively. *See Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (arbitration clause in employment contract stating that "all disputes or controversies arising under or in connection with this Agreement will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract") (ellipsis and internal quotation marks omitted); *Williams v. Imhoff*, 203 F.3d 758, 765 (10th Cir. 2000) ("arising out of" term in arbitration clause "must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from'").

Here, Plaintiff's claims all stem from her allegations related to actions taken by TD related to the Contract and its relationship with Plaintiff. As detailed above, Plaintiff expressly agreed to arbitrate "[a]ny claim or dispute" between herself and TD that "arises out of or relates to [her] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship," including claims or disputes "in contract, tort, statute or otherwise." TD Decl., Ex. A at 6. Plaintiff's claims clearly relate to the Contract and relationship arising out of the Contract between herself, Tesla, and TD. Plaintiff contends that a dispute exists regarding the Contract and the process by which it was repurchased by Tesla from TD. *See* ECF No. 12. In addition, Plaintiff makes allegations against TD regarding her credit application and TD's handling of her account, which are related to the Contract. *Id*. There can be no dispute that the allegations in the Amended Complaint fall within the scope of the Arbitration Provision of the Contract and arise out of the relationship established by the Contract.

Because Plaintiff's claims are well within the scope of the Arbitration Provision and any doubt as to the scope of the provision should be resolved in favor of arbitration, this Court should

compel arbitration of Plaintiff's claims against TD.

### D. The Court Should Administratively Close This Case Pending Arbitration.

Upon determining that a dispute is subject to arbitration, a court should stay the proceedings during the pendency of arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). However, D.C.COLO.LCivR 41.2 allows for an administrative closure of a case, as opposed to an indefinite stay of the proceedings. *See Talmadge v. Berkley Nat'l Ins. Co.,* 687 F.Supp.3d 1089, 1094 (D. Colo. 2023) ("Administrative closure pursuant to D.C.COLO.LCivR 41.2 may be appropriate when a case would otherwise be stayed for an indefinite amount of time."); *Angermann v. Gen. Steel Domestic Sales, LLC,* No. 10-cv-00711-REB-MJW, 2010 WL 4628913, at *2 (D. Colo. Nov. 8, 2010) (administratively closing the case subject to reopening after finding that a stay was required under § 3 of the FAA); *see also Quinn v. CGR,* 828 F.2d 1463, 1465 n.2 (10th Cir. 1987) (noting that administrative closure is construed as "the practical equivalent of a stay").

TD requests the Court administratively close and/or stay this action pending completion of the arbitration.

### CONCLUSION

TD Bank, N.A. respectfully requests that this Court (1) enforce the parties' Arbitration Provision; (2) order the parties to binding arbitration pursuant to the express terms of the Arbitration Provision; (3) administratively close and/or stay the instant litigation as to TD, including any discovery; and (4) award such other and further relief as the Court deems appropriate.

| | |
|---|---|
| Dated: <u>April 30, 2025</u> | Respectfully submitted,<br><br>**MCGUIREWOODS LLP**<br><br><u>*s/ Blaec C. Croft*</u><br>Blaec C. Croft<br>Tower Two Sixty<br>260 Forbes Ave., Suite 1800<br>Pittsburgh, PA 15222<br>412.667.6057<br>bcroft@mcguirewoods.com<br><br>*Attorneys for Defendant*<br>*TD Bank, N.A.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on 4/30/2025, a true and correct copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

*/s/ Blaec C. Croft*
Blaec C. Croft
