# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00377-JLK

MAXINE HENRY,

      Plaintiff,

v.

1.      TESLA, INC.;
2.      TD BANK, N.A., d/b/a TD AUTO FINANCE

      Defendants.

_____

## ORDER GRANTING DEFENDANT TESLA INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE INSTANT ACTION (ECF NO. 25)
_____

Kane, J.

This matter is before me on the Motion to Compel Arbitration and to Stay the Instant Action (ECF No. 25) filed by Defendant Tesla, Inc. For the following reasons, the Motion is GRANTED.

## I.      Background

In May 2023, Plaintiff Maxine Henry purchased a new vehicle from Tesla. She financed her purchase with a Retail Installment Sale Contract ("RISC"), which Tesla later assigned to Defendant TD Bank, N.A. d/b/a TD Auto Finance.[1] Resp. at 1, ECF No. 30. The first page of the RISC contained an Agreement to Arbitrate that states: "By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration

_____

1

Provision for additional information concerning the agreement to arbitrate." RISC at PDF p.2, ECF No. 25-3. Ms. Henry signed the Agreement to Arbitrate section of the RISC as part of her purchase. The Arbitration Provision itself requires

> [a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Id.* at PDF p.7. It also contains a survival clause: "This Arbitration Provision shall survive any termination, payoff or transfer of this contract." *Id.*

Approximately one year after Ms. Henry purchased her vehicle, TD Bank stopped accepting payments under the RISC, and Tesla refused to accept payments. Amended Compl. ¶¶ 25, 35-36, ECF No. 12. Ms. Henry alleges that Tesla informed her that TD Bank "deleted" or "cancelled" her loan, whereas TD Bank informed her that Tesla "paid off" the loan. Resp. at 13. Ms. Henry filed this lawsuit against Tesla and TD Bank alleging violations of C.R.S. §§ 4-9-609(a)(1), 4-9-210 and 15 U.S.C. §§ 1691, 1681. Both parties were properly served. TD Bank filed a Motion to Dismiss (ECF No. 10), and Ms. Henry filed an Amended Complaint (ECF No. 12) to cure the deficiencies identified by TD Bank. TD Bank then filed a Motion to Compel Arbitration (ECF No. 18). Ms. Henry and TD Bank stipulated to arbitrate and stay the case as to her claims against the bank. *See* Joint Stipulation to Compel Arbitration to Stay Proceedings at 1-2, ECF No. 19.

Tesla, however, failed to timely answer or respond to the Complaint. As a result, the Clerk of Court entered default against Tesla. *See* Clerk's Entry of Default, ECF No. 8. Nearly two weeks later, Tesla filed a Motion to Set Aside Default (ECF No. 9). Ms. Henry filed her

2

Amended Complaint before default judgment was entered against Tesla; thus, I denied Tesla's Motion to Set Aside as moot and determined Tesla's default was negated by the filing of the Amended Complaint. *See* Order on Entry of Default at 2, ECF No. 15. Tesla then filed an Answer to the Amended Complaint (ECF No. 16). In its Answer, Tesla asserted twelve affirmative defenses, including a defense that "Plaintiff's claims are subject to binding arbitration" and "demand[ing] that these claims be resolved through binding arbitration pursuant to the contract between the parties." Tesla's Answer at 4, ECF No. 16. Two months after filing its Answer, Tesla filed the pending Motion to Compel Arbitration.

Although Tesla has asserted that arbitration is required on multiple occasions in this case, Tesla engaged in limited discovery and case management with Ms. Henry before filing its Motion to Compel. In the Motion, Tesla requests a stay of proceedings and argues that, because it has not waived its right to arbitrate, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires arbitration of Ms. Henry's claims. Ms. Henry argues that Tesla has waived its right to arbitrate and thus that the Arbitration Provision is unenforceable. Because I am bound by the applicable law, I agree with Tesla.

## II.   Legal Standard

### a.   Federal Arbitration Act

Arbitration agreements are placed on the same footing as other contracts and are enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA explains that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. The U.S. Supreme Court has described this section as "reflecting both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility*, 563 U.S. at 339 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) (internal citations removed).

Nevertheless, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "In deciding whether to grant a motion to arbitrate, courts must resolve 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting *Howsam*, 537 U.S. at 84).

The FAA instructs that, if after hearing the parties on the matter, I am "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," I must "order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA further directs that if I am "satisfied that the issue involved in [the] suit or proceeding is referable to arbitration,"  I "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

   b.   *Enforceability and Waiver*

An arbitration provision "is presumed to survive the expiration of [a] contract . . . [unless there is] express or clearly implied evidence that the parties intended to override that presumption." *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275 (10th Cir. 2010). Thus, "when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998). A broad arbitration agreement "purport[s] to refer all disputes arising out of a contract to arbitration." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988).

A party, however, can waive the right to arbitration. *See Reid Burton Const., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980). The Tenth Circuit has recognized two forms of waiver: "(1) when a party intentionally relinquishes or abandons its right to arbitration; [and] (2) when a party's conduct in litigation forecloses its right to arbitrate." *BOSC, Inc. v. Bd. of Cnty. Comm'rs of the Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017). Because of the strong federal policy favoring arbitration, a party asserting waiver of arbitration has a "heavy" burden of proof. *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988).

To determine whether a party waived its right to arbitrate through its litigation actions, the Tenth Circuit directs me to analyze the facts of the case under the factors laid out in *Peterson*: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without

5

asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party." 849 F.2d at 467-68 (quoting *Reid Burton*, 614 F.2d at 702). These factors "reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010). The overarching consideration is "whether the party now seeking arbitration is improperly manipulating the judicial process." *BOSC*, 853 F.3d at 1174 (quoting *Hill*, 603 F.3d at 773).

### III.    Analysis

Here, there is no dispute as to whether a valid arbitration agreement exists. Ms. Henry and Tesla entered into an agreement to arbitrate "[a]ny claim or dispute . . . which arises out of or relates to [Ms. Henry's] credit application, purchase or condition of [the] vehicle, [the] contract or any resulting transaction or relationship." RISC at PDF p.7. This dispute falls within the RISC's broad Arbitration Provision. Ms. Henry, however, makes four arguments as to why I should deny Tesla's Motion: (1) the Arbitration Provision is unenforceable, (2) Tesla's litigation conduct waived its right to arbitrate, (3) Tesla has manipulated this Court by first seeking relief and then seeking to compel arbitration, and (4) the interest in promoting efficient use of resources in this case.

Her first argument is that, if the loan was cancelled or deleted as Tesla claims, then the Provision is unenforceable. The survival clause states that the "Arbitration Provision shall survive any termination, payoff or transfer of this contract." *Id.* Ms. Henry reads the survival clause to allow only three conditions for survival: termination, payoff, of transfer. *See* Resp. at

13. She explains that because Tesla contends the loan was cancelled or deleted rather than terminated, the Arbitration Provision did not survive the cancellation. I am not persuaded. As explained, "when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute." *Riley Mfg. Co.*, 157 F.3d at 781. One way to overcome this presumption is to determine whether the parties expressed or clearly implied an "intent to repudiate post-expiration arbitrability." *Id.* That has not happened here. Thus, regardless of semantics, the Arbitration Provision survives[2] whether the loan was cancelled, terminated, deleted, or paid off.[3]

Ms. Henry's next argument is that Tesla waived its right to arbitrate through its litigation conduct. I am guided by the *Peterson* factors in determining whether waiver has occurred. *See Hill*, 603 F.3d at 773. The first *Peterson* factor looks to whether Tesla's actions are inconsistent with the claimed right to arbitrate. Ms. Henry contends that because Tesla filed a motion to set aside default, filed a substantive answer, and engaged in scheduling and initial discovery, its actions are inconsistent with the right to arbitrate. *See* Resp. at 7-8. Tesla's participation in this litigation, while at times inadequate, has been minimal. Tesla has acted to protect itself from

---

[2] Tesla denies the allegation that it assigned the RISC to TD Bank. *See* Tesla's Answer to Amended Compl. ¶ 11, ECF No. 16.

[2] These so-called infinite survival clauses, however, give me pause. It does not strike me as logical that parties are required to "express or clearly imply" their intention to dismantle an arbitration agreement or else every claim falling under that agreement must be arbitrated. Assume an installment purchase contract contains a broad arbitration agreement with an infinite survival clause. The consumer agrees to pay a certain amount each month for three years to pay off the item. The consumer abides by the contract and completes payments on time. Thirteen years after he purchased the item, it malfunctions and injures the purchaser. Under current precedent, that consumer could be compelled to arbitrate his claim. That is an absurd result. *See generally* David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633 (2020). Ms. Henry, however, had not yet completed the installment payments when she brought this action, and thus I need not address such a scenario here.

[3] Ms. Henry requests a hearing on this issue. *See* Resp. at 14. Based on my review of the law, a hearing is not necessary, and the request is DENIED.

default; that affirmative conduct in this case is not inconsistent with arbitration. In its Answer, Tesla's eleventh affirmative defense is that "Plaintiff's claims are subject to binding arbitration." Tesla's Answer at 4. Tesla did not pursue any dispositive motions between filing its Answer and the instant Motion. While Tesla has engaged in scheduling proceedings and initial discovery, its actions were required by my orders or the Federal Rules of Civil Procedure. Thus, I find Tesla's conduct has not been inconsistent with its right to arbitrate.

Similarly, the second and third *Peterson* factors do not support finding that Tesla has waived its right to arbitrate. The "litigation machinery" has not been substantially invoked in this case, and Tesla did not impermissibly delay the filing of its Motion. A trial date has not yet been set, discovery has barely begun, and no dispositive motions have been filed. The parties were not "well into preparation of [this] lawsuit" before Tesla notified Ms. Henry of its intent to arbitrate or to compel arbitration. Tesla has not filed any counterclaims in this suit, removing the fourth *Peterson* factor from consideration. And, as to the fifth *Peterson* factor, Ms. Henry has not demonstrated that any steps taken by Tesla in this case are considered "important intervening steps" that are not available should the parties arbitrate. Nor has she shown that she has experienced any prejudice as a result of Tesla's delay in filing the Motion to Compel.

Ms. Henry's third and fourth arguments for why I should deny the Motion are easily disposed of. Tesla has done the minimum in this case: filed a motion to set aside default, answered the complaint, and participated in initial scheduling and discovery. None of these actions amount to improper manipulation of the judicial process. The relief initially sought by Tesla in this case—having the default set aside—was necessary before Tesla could move to compel arbitration. *Hill v. Ricoh Americas Corp.* discusses an example of improper manipulation of the judicial process when a defendant filed a motion to dismiss the complaint and waited until

after the district court rejected the motion as to numerous claims before moving to stay the case and compel arbitration. *Hill*, 603 F.3d at 773-74 (contrasting the facts of *Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 919 (8th Cir. 2009)). Tesla has not manipulated this Court in such a way. As for the efficient use of resources, because Ms. Henry has agreed to arbitrate with the other defendant in this case, it is a more efficient use of resources to compel her to also arbitrate with Tesla in order to avoid two separate proceedings and, potentially, two different outcomes.

## IV.    Conclusion

Accordingly, I find the Arbitration Provision remains enforceable and covers Ms. Henry's claims against Tesla in this case, and I conclude that Tesla has not waived its right to arbitrate under that Provision. It is, therefore, ORDERED that

1.  Tesla's Motion to Compel Arbitration and to Stay the Instant Action, ECF No. 25, is GRANTED.

2.  This action is STAYED pending the conclusion of arbitration proceedings. Within fourteen days of the conclusion of the arbitration proceedings, the parties are DIRECTED to file a joint status report proposing how this case should proceed.

3.  The Clerk of Court is DIRECTED to ADMINISTRATIVELY CLOSE this case pursuant to D.C.COLO.LCivR 41.2. Should the parties so choose, a motion to reopen for good cause may be filed with the Court.

DATED this 11th day of May, 2026.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

9